# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DENNIS D. HOKE, JR. and DENISE A. HOWARD, | |
| Plaintiffs, | Case No. 22-CV-1346-JPS |
| v. | |
| DEEDRA A. JOHNSON, | **ORDER** |
| Defendant. | |

On November 14, 2022, Plaintiffs Dennis D. Hoke, Jr. ("Hoke") and Denise A. Howard ("Howard") (together, "Plaintiffs"), proceeding pro se, filed a complaint alleging a variety of federal and state law claims against their former landlord, Deedra A. Johnson ("Johnson"). ECF No. 1. Hoke and Howard also each filed a motion to proceed *in forma pauperis*, or without prepayment of the filing fee. ECF Nos. 2, 3.

On December 19, 2022, the Court screened Plaintiffs' complaint, dismissed some claims with prejudice, and granted Plaintiffs leave to amend to assuage the Court that it has subject matter jurisdiction over this matter, as well as to resolve identified deficiencies and provide additional detail with respect to Plaintiffs' claims. ECF No. 9. The Court also granted Plaintiffs' motions to proceed *in forma pauperis*. *Id.* On January 23, 2023, Plaintiffs filed an amended complaint. ECF No. 10. This Order screens the amended complaint and determines that Plaintiffs may proceed with the claims set forth in this Order.

1.  **SCREENING STANDARDS**

    A court may screen a pro se complaint prior to service on defendants to determine whether it complies with the Federal Rules of Civil Procedure and states at least plausible claims on which relief can be granted. *See Richards v. HSBC Tech. & Servs. USA, Inc.*, 303 Fed. Appx. 356, 357 (7th Cir. 2008). When a plaintiff requests leave to proceed in forma pauperis, the Court must screen the complaint. *See* 28 U.S.C. § 1915(e)(2). If the court finds any of the following, then the "court shall dismiss the case": the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief. *Id.*

    To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

    In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*,

556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2.  **RELEVANT ALLEGATIONS**

Plaintiffs are both residents of Wisconsin. ECF No. 10 at 1. Plaintiffs' allegations stem from Howard's prior tenancy in an apartment building in Waukesha, Wisconsin (the "Building"). *Id.* at 1–2. Hoke was not a tenant in the Building, but during Howard's tenancy in the Building and currently, was and is Howard's boyfriend. *Id.* at 3. Howard called Hoke to assist when issues, such as the sewage backups described below, occurred in the Building. *Id.* at 3. Plaintiffs contend that Johnson is the owner of the Building and was Howard's landlord. *Id.* at 2. Johnson is a resident of Georgia. *Id.*

First, Plaintiffs allege that, during their time residing in the Building, they suffered several raw sewage backups of human waste. *Id.* They notified Johnson of the raw sewage backups on September 28, 2021 (it appears that backups occurred September 28, 2021, March 3, 2020, and several times prior), but Johnson refused to hire a qualified plumber. *Id.* Plaintiffs allege therefore that "Johnson had actual knowledge of conditions that may endanger or impair a person's health[,] safety, or well-being." *Id.*

Following Plaintiffs' notification, Johnson arrived at the Building on September 30, 2021, and demanded that Plaintiffs move furniture to allow a "very large snaking machine" inside. *Id.* at 3. According to Plaintiffs, a snaking machine never arrived, because Plaintiffs allege that they tackled the issue themselves. *Id.* Plaintiffs allege that "after running" five-gallon

buckets of sewage up the stairs and "[pour]ing the human [waste] onto the road," they "purchased a submersible pump to pump the human [waste] to the road." *Id.* The human waste was comprised of waste from all four units in the Building. *Id.* Plaintiffs contend that Johnson "failed to inform Howard of the lateral style sewage pumping," and led Howard to believe that she had caused the backups. *Id.* As a result, Plaintiffs contacted a property inspector to assess the property. *Id.*

Second, Plaintiffs allege that, during their time residing in the Building, they suffered the effects of black mold. *Id.* at 4. Plaintiffs maintain that they asked Johnson to "hire someone to correctly do remediation," but "due to her unwillingness in wanting to pay the amount[,] only the carpet was taken out and left the lower level uninhabitable completely." As a result, both Hoke and Howard paid out of pocket for mold testing. *Id.* The mold testing was positive. *Id.*

At some point, Plaintiffs appear to have lodged complaints with various administrative agencies regarding Johnson's neglect of the Building. *Id.* Johnson thereafter began to harass and retaliate against Plaintiffs. *Id.* Specifically, Johnson demanded by letter on December 3, 2021 that Howard "clean up" and described "new changes that only apply to Howard," including an expectation of "full compliance." *Id.* On December 7, 2021, Johnson demanded that sheds that Howard had erected for 11 years be removed and ordered Howard to comply. *Id.* Johnson also sent Howard letters informing her that Howard's rent would be raised, and that Howard would be assessed extra fees. *Id.*

As to Hoke, Johnson, while intoxicated, threatened Hoke with bodily harm following Plaintiffs' complaints. *Id.* at 3. Johnson's husband also intimidated Hoke by stepping into his personal space and manifesting an

"arrogant, aggressive, [and] entitled attitude" when Hoke explained that it was not normal to have raw sewage backups. *Id.* at 5. According to Plaintiffs, Johnson began stalking them daily, including by sitting in her SUV and observing them, or "going around to the neighbors asking questions about Hoke." *Id.* Johnson began to "mak[e] untrue things up about Hoke." *Id.* As a result, Howard began having chest pains, resulting in a "comple[te] breakdown." *Id.* After visiting urgent care, she remains on heart medication. *Id.* Ultimately, the lease was terminated and Howard moved. *Id.* at 7. Johnson has withheld $480.00 of Howard's security deposit. *Id.* at 5.

Plaintiffs' amended complaint raises state law claims under Wis. Admin. Code ATCP §§ 134.06, 134.07, and 134.09(5); as well as for breach of contract, negligence, invasion of privacy,[1] and nuisance. *Id.* at 2, 7; *see also* ECF No. 9 (original screening order). Plaintiffs seek $600,000 in damages, representing, among others, mental distress, lost rent, recovery of lost property, moving expenses, the security deposit, and storage costs. *Id.* at 7.

3. **ANALYSIS**

   3.1 **The Court's Jurisdiction**

To begin, as the Court explained in its original screening order, ECF No. 9, the Court must assuage itself that it has jurisdiction over this action. Generally, federal courts can preside over cases in two situations: (1) where

---

[1]Plaintiffs do not outright list the invasion of privacy claim as they do with the others, but they plead that Johnson and her husband invaded Hoke's personal space, which was one of the facts underlying the claim as pleaded in the original complaint. Therefore, interpreting the amended complaint liberally, which the Court is required to do, Plaintiffs continue to plead the claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that courts should evaluate pro se pleadings with an eye toward substantial justice).

the action "aris[es] under the Constitution, laws, or treaties of the United States," and (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §§ 1331, 1332.

In their amended complaint, Plaintiffs do not replead to remedy the Court's identified deficiencies, ECF No. 9 at 6–7, or plead at all, a 42 U.S.C. § 1982 claim, as they did in the original complaint.[2] Therefore, the Court will dismiss that claim without prejudice.[3] As it stands now, therefore, Plaintiffs plead only state law claims. As a result, for the Court to have jurisdiction over this case, "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs, and [be] between . . . citizens of different States." 28 U.S.C. § 1332. Plaintiffs are citizens of Wisconsin and Johnson is a citizen of Georgia. Plaintiffs seek $600,000 in damages, which on its face meets the amount in controversy threshold. But that is not the end of the inquiry.

In the Court's view, Howard alone undeniably meets the amount in controversy pleading threshold. The question is whether Hoke's claims and damages, which less clearly meet the threshold standing alone, may be aggregated with Howard's. As the Court explained in its original screening order, "[t]he general rule is that the claims of multiple litigants cannot be

---

[2] As the Court explained in its original screening order, "[t]he amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint." ECF No. 9 at 18 (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998)).

[3] For the same reason, the Court dismisses Plaintiffs' claim for breach of the covenant of quiet enjoyment without prejudice. Plaintiffs do not replead the claim in order to remedy the deficiencies identified in the Court's original screening order, ECF No. 9 at 14–15, or plead the claim at all in the amended complaint.

aggregated to reach the jurisdictional amount in controversy." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 717 (7th Cir. 2012). As pertinent here, aggregation may be permitted in cases where two or more plaintiffs "have a common and undivided interest in a single title or right." *Id.* (citations omitted). Typically, aggregation is permissible under this standard where there is joint ownership of a piece of property or joint rights under a contract, but not where claims arise under "separate transactions." *Id.* at 720.

In its original screening order, the Court was under the impression that Hoke and Howard each had separate leases with Johnson, which the Court explained would not allow for aggregation under the applicable standard. ECF No. 9 at 7. The amended complaint makes clear that the line is now blurrier, given that Hoke was a guest of Howard's and arguably interacted with Johnson pursuant to the same underlying transaction(s)—whether that term be construed as the lease or sequence of communications between Plaintiffs and Johnson. *See Travelers*, 689 F.3d at 720 (explaining that "the distinction between common and undivided interests and separate and distinct interests" is not always useful and may "prove[] particularly slippery" in certain factual circumstances). Additionally, the amended complaint plausibly suggests that both Howard and Hoke paid out-of-pocket for remediation expenses.

Because this case is at the pleadings stage, the Court will permit it to proceed, with the understanding that further briefing may ultimately become necessary on aggregation. That further briefing may lead to the possibility of submission of "competent proof" of damages to meet the threshold. *See, e.g., McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 845 (7th Cir. 2009) (reviewing jurisdictional memoranda and concluding

Page 7 of 16
Case 2:22-cv-01346-JPS    Filed 03/17/23    Page 7 of 16    Document 11

that "none of the plaintiffs points to any 'competent proof' that he or she could prove damages from these categories to recover a total amount of damages that would reach the jurisdictional threshold" given the court's determination that claims could not be aggregated).

### 3.2 Plaintiffs' Claims

#### 3.2.1 Wis. Admin. Code ATCP § 134.07

Plaintiffs' first claim arises under Wis. Admin. Code ATCP § 134.07. Chapter 134 provides that "[a] person who suffers a monetary loss because of a violation of this chapter may sue the violator directly . . . and may recover twice the amount of the loss, together with costs and reasonable attorneys' fees." Thus, Section 134.07 provides a private right of action. *See McFarland v. Housing Auth. of Racine Cnty.*, No. 21-CV-299-JPS, 2022 WL 204624, at *5 (E.D. Wis. Jan. 24, 2022) (citing *Paape v. Grefsheim*, 888 N.W.2d 247 (Table), 2016 WL 5923088, at *3–4 (Wis. Ct. App. 2016)).

Under Section 134.07, "a landlord is required to specify a date or time period within which the improvements are to be completed" and "the landlord must complete the promised repairs within the time represented unless the delay is due to enumerated reasons or other causes beyond his control." *Demarce v. Diesing*, 600 N.W.2d 55 (Table), 1999 WL 540302, at *4 (Wis. Ct. App. 1999). If the delay is due to one of the enumerated reasons or causes beyond the landlord's control, "[t]he landlord shall give timely notice to the tenant of reasons beyond the landlord's control for any delay in performance, and stating when the cleaning, repairs or improvements will be completed." Wis. Admin. Code ATCP § 134.07.

Plaintiffs remedied the pleading deficiencies the Court observed as to this claim in its original screening order. ECF No. 9 at 9. For example, at a minimum, Plaintiffs plausibly plead that Johnson specified a time for

improvements on September 30, 2021 when she mentioned bringing the snaking machine in, but that the improvements were never completed. Plaintiffs also explain that their damages due to Johnson's alleged violation of Section 134.07 involve, among others, lost property. *Demarce*, 1999 WL 54032, at *1 (raising Section 134.07 claim for damage to personal property that was damaged when landlord delayed and did not complete repairs of roof). As will be further developed later in the litigation, this claim is likely specific to Howard, and she may proceed on the claim.

### 3.2.2 Breach of the Implied Warranty of Habitability, Breach of Contract, and Negligence

The Court groups and analyzes Plaintiffs' claims for breach of the implied warranty of habitability, breach of contract, and negligence together in line with Wisconsin authority.

The Wisconsin Supreme Court has explained that a breach of the implied warranty of habitability claim "is a breach of contract claim for contractual damages"; Wisconsin law does not allow a party "to seek compensatory damages for the violation of the implied warranty of habitability." *Antwaun, Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*, 596 N.W.2d 456, 468–69 (1999). Instead, compensatory damages are recoverable in negligence. *Id.* The remedy for a breach of the implied warranty of habitability is "the reasonable rental value of the premises during the actual occupancy." *Pines v. Perssion*, 111 N.W.2d 409, 597 (Wis. 1961).

Thus, to proceed on a claim for breach of the implied warranty of habitability, Plaintiffs must be in privity of contract with Johnson; that is, they must be tenants under a lease contract with Johnson. *Id.* Howard was under a lease contract with Johnson. Therefore, as will be further developed

later in the litigation, this claim is likely specific to Howard, and she may proceed on the claim.

To proceed on a breach of contract claim in addition to a breach of the implied warranty of habitability claim, the lease must provide a remedy separate from the remedy allowed by the breach of the implied warranty of habitability claim; that is, recovery of rent. *Cf. Raymaker v. Am. Fam. Mut. Ins. Co.*, 718 N.W.2d 154, 161–62 (Wis. Ct. App. 2006); Plaintiffs' amended complaint, like the original complaint, ECF No. 9 at 10, still does not plead that the lease includes a separate remedy. Therefore, the breach of contract claim will be dismissed without prejudice. Plaintiffs may later seek leave to amend their complaint to replead this claim if they are able to demonstrate that the lease provides such a remedy.

Through their negligence claim, as explained, Plaintiffs may seek compensatory damages for personal injuries due to the Building being unfit for residence. "As with any negligence claim," a negligence claim by a tenant against a landlord requires a showing of "(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Antwaun*, 596 N.W.2d at 461.

Under Wisconsin law, "all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others"; the duty arises "when it can be said that it was foreseeable that [the actor's] act or omission to act may cause harm to someone." *Id.* (citations omitted). The foreseeability test in the landlord-tenant context is "nothing more than a specific application of the general duty a landlord has to use ordinary care under the circumstances to avoid exposing persons lawfully on the property from an unreasonable risk of harm." *Id.* The landlord "ordinary

care" test, as applied to this case, inquires "whether the landlord knew or in the use of ordinary care should have known" about the raw sewage backups and black mold. *Id.* Here, Plaintiffs have pleaded knowledge on the part of Johnson. Thus, they have met the first element.

They have also pleaded that Johnson failed to adequately repair the raw sewage backups and black mold. This satisfies the second element. As to the third and fourth elements, Plaintiffs plead that they had to handle raw sewage and pay out of pocket for mold testing, and provide a breakdown of their physical, mental, and financial damages. At the screening stage, this is sufficient, and Plaintiffs may proceed on this claim. As will be further developed later in the litigation, this claim likely applies to both Howard and Hoke.

### 3.2.3    Wis. Admin. Code ATCP § 134.09(5)

Section 134.09(5), as explained in the Court's original screening order, ECF No. 9 at 12, codifies and provides a private right of action for retaliation. That section provides that

> No landlord shall terminate a tenancy or give notice preventing the automatic renewal of a lease, or constructively evict a tenant by any means including the termination or substantial reduction of heat, water or electricity to the dwelling unit, in retaliation against a tenant because the tenant has:
>> (a) Reported a violation of this chapter or a building or housing code to any governmental authority, or filed suit alleging such violation; or
>>
>> (b) Joined or attempted to organize a tenant's union or association; or
>>
>> (c) Asserted, or attempted to assert any right specifically accorded to tenants under state or local law.

Wis. Admin. Code ATCP § 134.09(5). Howard pleads that she reported Johnson to several administrative agencies. She plausibly pleads that, as a result, her tenancy was ultimately terminated. At the screening stage, as it was in the Court's original screening order, ECF No. 9 at 13, these allegations are sufficient. As will be further developed later in the litigation, this claim is likely specific to Howard, and she may proceed on the claim.

### 3.2.4 Wis. Admin. Code ATCP § 134.06

Wis. Admin. Code ATCP § 134.06 provides a private right of action to pursue a landlord's failure to return a security deposit. That provision provides that the landlord must return the security deposit, less any amounts as provided by statute, to the tenant within 21 days after any of the following:

> (a) If the tenant vacates the premises on the termination date of the rental agreement, the date on which the rental agreement terminates.
>
> (b) If the tenant vacates the premises or is evicted before termination date of the rental agreement, the date on which the tenant's rental agreement terminates or, if the landlord rerents the premises before the tenant's rental agreement terminates, the date on which the new tenant's tenancy begins.
>
> (c) If the tenant vacates the premises or is evicted after the termination date of the rental agreement, the date on which the landlord learns that the tenant has vacated the premises or has been removed from the premises [].

Plaintiffs have sufficiently pleaded this claim. As will be further developed later in the litigation, this claim is likely specific to Howard, and she may proceed on the claim.

### 3.2.5 Invasion of Privacy

Next, the Court turns to Plaintiffs' claim for invasion of privacy. "Four types of invasion of privacy are actionable in a civil suit in Wisconsin":

> 1. Intrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private, or in a manner that is actionable for trespass.
>
> 2. The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.
>
> 3. Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.
>
> 4. Conduct that is prohibited under s. 942.09, regardless of whether there has been a criminal action related to the conduct, and regardless of the outcome of the criminal action, if there has been a criminal action related to the conduct.

*Int. of E.K.*, 982 N.W.2d 361, 2022 WL 4242054 (Table), at *7 (Wis. Ct. App. Sept. 15, 2022). Assuming that Plaintiffs allege that Johnson and her husband invaded their privacy when they threatened them while intoxicated, stalked them, and invaded their personal space, their claim most closely fits within the first type of invasion of privacy.

Wis. Stat. § 995.50(3), which codifies the four types of invasion of privacy, provides that they shall be interpreted in accordance with "the developing common law of privacy." *Id.* at *8. The common law of privacy, as to the first codified type, explains that an invasion of privacy is an

"unreasonable intrusion upon the seclusion of another," which is further described as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his [or her] private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id.* at *9.

At the screening stage, Plaintiffs have sufficiently stated this claim. As will be further developed later in the litigation, this claim likely applies to both Howard and Hoke, and they may proceed on the claim.

### 3.2.6   Nuisance

Finally, Plaintiffs plead a claim for nuisance. Under Wisconsin law, a nuisance may be public or private, which is determined "by the nature of the interest invaded." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 669 (Wis. 2005). "The essence of a private nuisance is the use and enjoyment of land," which is "broadly defined." *Id.* One may be subject to liability for private nuisance if (1) "his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land," and (2) the invasion is either "intentional and unreasonable" or "unintentional and otherwise actionable under the rules controlling liability for negligent . . . conduct." *Id.* at 671. A failure to act that results in a nuisance may still result in liability. *Id.*

At the pleadings stage, Howard has sufficiently pleaded this claim.[4] As will be further developed later in the litigation, this claim is likely specific to Howard, and she may proceed on the claim.

---

[4]Leased property may provide the "property right and privilege" in the use and enjoyment of land required to bring a private nuisance claim. *Milwaukee Metro. Sewage Dist.*, 691 N.W.2d at 669; *see generally Mose v. Tedco Equities—Potter Road Ltd. P'ship*, 598 N.W.2d 594 (Wis. Ct. App. 1999).

## 4. CONCLUSION

For the reasons stated herein, Plaintiffs may proceed on the following claims: (1) Wis. Admin. Code ATCP § 134.07 (Count One); (2) Breach of the Implied Warranty of Habitability (Count Two); (3) Negligence (Count Three); (4) Wis. Admin. Code ATCP § 134.09(5) (Count Four); (5) Wis. Admin. Code ATCP § 134.06 (Count Five); (6) Invasion of Privacy (Count Six); and (7) Nuisance (Count Seven). Whether the facts bear out these claims, or whether Johnson has any procedural or substantive defenses for her actions, must be determined at a later date.

Finally, Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service by the U.S. Marshals Service if a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See Williams v. Werlinger*, 795 F.3d 759, 760 (7th Cir. 2015). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the Court to order service by the U.S. Marshals Service because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. Thus, the Court will allow Plaintiffs to elect, within **fourteen (14) days**, whether they desire service by the U.S. Marshals Service or whether they will obtain service of their own accord. If Plaintiffs want to effect service themselves, they should simultaneously file a request for the Clerk of the Court to issue a service packet to them.

**The Court warns Plaintiffs that if they fail to comply with this or any of the Court's orders, their case will be dismissed without further notice for failure to prosecute.**

Accordingly,

**IT IS ORDERED** that Plaintiffs Denise A. Howard and Dennis D. Hoke, Jr. shall file, within **fourteen (14) days**, a notice indicating which method of service they desire; and

**IT IS FURTHER ORDERED** that Plaintiffs Denise A. Howard and Dennis D. Hoke, Jr.'s 42 U.S.C. § 1982, breach of contract, and breach of quiet enjoyment claims be and the same are hereby **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiffs are further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFFS FAIL TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.